# STATE OF MICHIGAN

# COURT OF APPEALS

HOMESPUN MARKET, LLC,

Plaintiff-Appellee,

v

W & L PEARL ARTS, INC, and LISA WONG,

Defendants-Appellants.

UNPUBLISHED
April 24, 2018

No. 337367
Livingston Circuit Court
LC No. 16-029155-NZ

Before: MURPHY, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

This case arises out of a dispute regarding a lease of commercial property located in Brighton, Michigan. On December 29, 2016, the trial court granted plaintiff's motion for entry of a settlement agreement. We reverse, vacate the entry of the settlement agreement, and remand for further proceedings consistent with this opinion.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

On January 23, 2016, the parties entered into a lease agreement, whereby plaintiff, Homespun Market, LLC, agreed to lease commercial space from defendants, W&L Pearl Arts, Inc, (WLPA) and Lisa Wong (Wong). Shortly thereafter, the parties had a dispute over the use and division of the front and back portions of the leased premises, the front portion having been reserved under the lease for plaintiff. Plaintiff alleged that it received a certificate of occupancy for the entire space from the City of Brighton in February 2016, but subsequently learned in June 2016 that defendant had entered into a lease for the back portion of the building. Defendants informed plaintiff that the new tenants would be building a bathroom and handicap accessible ramp to the rear entrance of their store.

Plaintiff alleged that sometime in July 2016, Wong indicated that the tenants in the back suite would need to access plaintiff's bathroom and basement, and that plaintiffs responded "that they would not be willing to make any changes to their leased space" or modify the lease itself. Plaintiff claimed it discovered through public records that it held the certificate of occupancy for the entire main level of the leased premises. Plaintiff alleged that the City of Brighton denied the new tenant's request for a certificate of occupancy on or around July 2016, but that defendant permitted their occupancy and other acts not allowed under the lease. Plaintiff further alleged that the City of Brighton placed a notice of violation on the back suite of the premises, which

-1-

invalidated any and all certificates of occupancy issued for the entire first floor and basement of the premises.

Plaintiff claimed that after it gave defendants notice of the alleged lease violations, Wong responded by indicating that she was denying building access to anyone without a certificate of occupancy, and that all activities concerning the premises required her written consent. Further, plaintiff alleged that in September 2016, defendants arranged for an architect to create a shared space and bathroom plan, even though the lease agreement did not permit the planned modification to the premises. Additionally, Wong approved and paid for the installation of a door that divided the front space and back space. Plaintiff claimed it subsequently received a demand for possession from defendants.

Plaintiff filed suit against defendants, seeking a preliminary injunction, specific performance, and declaratory relief. The trial court granted plaintiff a preliminary injunction in October 2016, and ordered that defendants would be prohibited from taking action that would jeopardize the certificate of occupancy; entering the premises for any purpose other than inspection allowed pursuant to the lease; changing the locks and removing personal property from the premises; disrupting plaintiff's business and taking action to change the premises' physical structure until the parties' respective rights were adjudicated; and taking further steps to eject plaintiff from the premises.

At some point, the parties began to engage in settlement discussions. Plaintiff filed a motion to enforce a purported settlement agreement, claiming that the parties had reached a binding settlement agreement. The trial court determined that various text messages, email chains, and other writings, when read together, amounted to evidence of a final, enforceable settlement agreement. Accordingly, it granted plaintiff's motion. This appeal followed.

II. ANALYSIS

Defendants argue that the trial court clearly erred by granting plaintiff's motion for the entry of a settlement agreement when the parties had not entered into an enforceable agreement. We agree.

"[A]n agreement to settle a pending lawsuit constitutes a contract, and therefore the agreement is governed by legal principles applicable to the interpretation and construction of contracts." *Columbia Assoc, LP v Dep't of Treasury*, 250 Mich App 656, 669; 649 NW2d 760 (2002). We review the existence and interpretation of such a contract de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 745, 767; 773 NW2d 766 (2006). A settlement agreement must also satisfy the requirements of MCR 2.507(G), and the trial court's interpretation of a court rule is also reviewed de novo. *Michigan Mut Ins Co v Indiana Ins Co*, 247 Mich App 480, 483-485; 637 NW2d 232 (2001). Absent a finding of an abuse of discretion, a trial court's finding concerning the validity of a parties' consent to a settlement agreement will not be overturned. *Vittiglio v Vittiglio*, 297 Mich App 391, 397; 824 NW2d 591 (2012). A trial court's factual findings are reviewed for clear error, MCR 2.613(C), and an abuse of discretion occurs only when the trial court makes a decision that falls outside the range of "reasonable and principled outcome[s]." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006); MCR 2.504(B).

As in any other contract, a settlement agreement must include an offer and acceptance, as well as "mutual assent or a meeting of the minds on all essential terms." *Kloian*, 273 Mich App at 452-453; *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 571; 525 NW2d 489 (1994). Acceptance must be unambiguous and in strict conformity with the offer, otherwise no contract is formed. *Kloian*, 273 Mich App at 452-453. (citation omitted). Even if a settlement agreement meets all the formation requirements of contract law, it will not be enforced unless "the agreement also satisfies the requirements of" MCR 2.507(G). *Id*. at 456. MCR 2.507(G) provides:

> An agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

"Subscribe means to append, as one's signature, at the bottom of a document or the like; sign." *Kloian*, 273 Mich App at 459 (quotation marks and citation omitted). An electronic signature will satisfy this requirement, as will a signature at the bottom of an email, so long as the email also contains the terms of the settlement. *Id*. at 459-460, citing MCL 450.837(4).

Our review of the documents considered by the trial court indicates that both parties were interested in settling this matter, and were actively working towards a comprehensive written agreement. However, even if we were to conclude that there was a meeting of the minds on all material terms, the purported settlement agreement relied on by the trial court did not comport with the requirements of MCR 2.507(G), and therefore, is unenforceable. The parties did not place the terms of the settlement on the record, and the purported agreement relied on by the trial court, offered by plaintiff against defendants, was not subscribed to by defendants or their counsel. In fact, defendants remained adamant that the ongoing settlement negotiations had not yet come to a resolution, and plaintiff concedes in its briefs on appeal that there were some details to be finalized. Plaintiff correctly argues that defendants, or their counsel, could have subscribed to the agreement via email. *Kloian*, 273 Mich App at 459-460. However, plaintiff does not cite to any email containing all of the mutually agreed to settlement terms subscribed to by defendants or their counsel, and our review of the record yields none. Accordingly, the trial court's finding that a valid settlement agreement had been reached was clearly erroneous, and likewise, the trial court abused its discretion by enforcing the purported settlement agreement. See *Henry v Prusak*, 229 Mich App 162, 170; 582 NW2d 193 (1998) ("A court cannot 'force' settlements upon parties.")

We reverse, vacate the entry of the settlement agreement, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Brock A. Swartzle

-3-